IN THE UNITED STATED DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No.: _____

| | | |
|---|---|---|
| DAVID DUGAN, *On Behalf of Himself and Others Similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| NATIONSTAR MORTGAGE LLC | ) ) ) | [JURY TRIAL DEMANDED] |
| Defendant | ) ) ) ) ) | |

Plaintiff David Dugan (collectively, "Mr. Dugan" or "Plaintiff"), on behalf of himself and all others similarly situated, files this Class Action Complaint against Nationstar Mortgage LLC ("Nationstar" or "Defendant") and states:

**NATURE OF THE ACTION**

1. This is a consumer protection action brought by Plaintiff David Dugan ("Plaintiff") and others similarly situated to obtain redress from Defendant's withdrawal of enormous sums of money from the bank accounts of more than 14,000 North Carolinians.

2. Specifically, Nationstar participated in unauthorized debits of mortgage payments from borrower bank accounts; withdrawing multiple

1

months of payments from their customers without notice. These withdrawals led to significant overdraft fees and left borrowers such as Plaintiff with reduced (or zero) purchasing power while they waited for Nationstar to correct its errors.

3.      This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all borrowers from whom Nationstar unlawfully collected funds through improper ACH debit transactions, in violation of North Carolina and Federal law as further set forth herein.

## JURISIDICTION AND VENUE

4.      The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The matters in controversy in this action exceed $5,000,000.00 in statutory damages.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) as a substantial part of the events giving rise to the claim took place in this district.

## PARTIES

7.      Plaintiff David Dugan ("Dugan") is and, at all relevant times hereto, has been a citizen and resident of North Carolina. Dugan is the owner of a residential home located at Durham County, North Carolina. Dugan's

Case 1:21-cv-00341-TDS-JEP   Document 1   Filed 04/30/21   Page 2 of 20

home was secured by a mortgage which was serviced by Defendant. On or about April 26, 2021, Plaintiff had approximately $5,600 withdrawn from his bank account without notice, authorization, or consent; consisting of 4 withdrawals of approximately $1,400 each.

8.     Plaintiff is a consumer as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

9.     Nationstar Mortgage LLC is a Delaware Limited Liability Company with a principal place of business in Coppell, Texas. Nationstar services mortgages throughout the country, including in this District.

## FACTUAL ALLEGATIONS

10.    Nationstar frequently acts as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), including with regard to Plaintiffs' mortgage loans because, upon information and belief, Nationstar obtained the servicing rights while in a state of default.

11.    Nationstar is a "debt collector," as defined by the NCDCA, N.C.G.S. § 75-50.

12.    Nationstar is regularly engaged in the business of collecting debt in the State of North Carolina. Its employees, affiliates, directors, agents, vendors, and attorneys (including ACI Worldwide) act under the direction and supervision of Nationstar and, therefore, Nationstar is responsible and/or

3

vicariously liable for the actions of its employees, affiliates, directors, agents, vendors and attorneys under, *inter alia*, the theory of *respondeat superior*.

13.     Nationstar is a servicer of mortgages for residential housing loans. As a mortgage servicer, Nationstar contracts with loan owners to collect payments, fees, and other amounts owed by the homeowner and to provide other "services" to investors relating to the homeowner's loan. Nationstar also occasionally refinances mortgages and becomes the mortgage lender, while still performing the same servicing duties.

14.     Upon information and belief, Nationstar services not less than hundreds of thousands of loans throughout the United States, including Named Plaintiff's and Class Members' mortgage loans.

15.     When Nationstar acquires the servicing rights to a particular loan portfolio, many of the loans, if not the majority of the loans, contained in that portfolio are delinquent when Nationstar acquires the rights to the portfolio.

16.     Upon information and belief, Nationstar allows borrowers such as Plaintiff to authorize Nationstar to initiate automatic recurring debit entries once per month equal to the required monthly payments for Plaintiff's loan. This allows the debt collection process to run smoothly, efficiently, and (theoretically) safely.

17.     This process is generally initiated through an Automatic Clearing House ("ACH") debit transaction from the Borrower's financial institution.

18. Parties such as Nationstar who initiate these monthly debit transactions are commonly referred to as "Originators."

19. Originators initiate an ACH transfer through their Originating Depository Financial Institution ("ODFI"), or a third-party agent. Originators and ODFIs occasionally contract with third parties to act as their agents associated with these transfers.

20. Borrowers such as Plaintiff are commonly referred to as "Receivers," in that their Receiving Depository Financial Institution ("RDFI") receives the ACH transfer request from the ODFI.

21. Upon information and belief, Nationstar, or its agents, typically will submit a batch file (or files) through the ACH network to initiate debits from its borrowers' accounts.

22. Each borrower who is making payments pursuant to a mortgage note should only appear on **one batch file per month**, on a pre-ordained schedule authorized by the borrower.

23. However, in April, 2021, Nationstar submitted hundreds of thousands of improper ACH debit requests. For example, Nationstar, or its agents, initiated four debit requests to Plaintiff Dugan's RDFI. Upon information and belief, some borrowers had as many as six ACH debit requests to their bank.

24. As Dugan had 'authorized' Nationstar to initiate ACH requests,

5

Case 1:21-cv-00341-TDS-JEP   Document 1   Filed 04/30/21   Page 5 of 20

Mr. Dugan's RDFI allowed Nationstar's ODFI (or agent) to pull money from his account. In Mr. Dugan's case, around $5600 was taken, equivalent to four monthly mortgage payments. Mr. Dugan, of course, did not authorize this. Upon information and belief, some borrowers had as much as $50,000.00 taken by Nationstar.

25.    Mr. Dugan suffered overdraft fees and was left without purchasing power while Nationstar's failures were investigated.

26.    Upon information and belief, tens of thousands of similarly situated Plaintiffs also experienced unauthorized ACH debits on their account.

27.    Nationstar unlawfully collected tens of thousands of unauthorized borrower mortgage loan payments.

28.    Nationstar (or its agents) failed to have measures in place to ensure that pre-authorized monthly transactions only occurred *monthly*.

29.    Nationstar (or its agents) failed to have measures in place to identify significant abnormalities in its ACH debit transactions *prior* to 'settlement' of the transaction; i.e. the money leaves the borrower's bank account and goes to Nationstar.

30.    Nationstar (or its agents) failed to have measures in place to identify an out-of-control run on ACH debit transactions prior to settlement of these transactions.

31.    Upon information and belief, Nationstar (or its agents) failed to

6

comply with the NACHA Operating Rules, which govern ACH transactions and are designed to provide security to the participants. Nor, upon information and belief, did Nationstar (or its agents) comply with Federal regulations and guidelines governing ACH transactions.

32. Instead, **Nationstar repeatedly collected mortgage debt to which it was not authorized to collect**.

33. In the case of Plaintiff, Nationstar collected *at least* three unauthorized mortgage payments which it was not authorized to collect.

34. As a result of the foregoing, Plaintiff and Class Members have experienced anxiety, stress, anger, frustration, and mental anguish which is fairly traceable to their withdrawal of monies from their bank account.

35. As a result of the foregoing, Plaintiff and Class Members were deprived of interest that would have accrued on their personal funds had Nationstar not withdrawn them without authorization.

36. Upon information and belief, Nationstar was unjustly enriched by accruing interest on the unauthorized withdraws.

37. As a result of the foregoing, Nationstar, *inter alia*, violated borrowers' substantive rights to be free from unlawful debt collection, violated borrowers' rights to be able to make informed decisions regarding their finances, caused their customers to be charged overdraft fees, and caused their borrowers to have limited purchase power while accounts were overdrawn.

7

38.     As an example of limited purchase power, Plaintiff Dugan did not have money in his checking account to allow him to purchase food while Nationstar's "mistake" was ongoing.

## CLASS ACTION ALLEGATIONS

39.     The forgoing allegations are hereby reincorporated by reference as if fully restated herein.

40.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action individually and on behalf of the following classes which are tentatively defined as:

> **NC Class**: All consumers throughout the State of North Carolina whose mortgage loans were serviced by Nationstar who had funds in excess of a single monthly payment withdrawn from their account during the period from April 30, 2017 through the filing of this Complaint.
>
> **FDCPA Subclass:** All consumers throughout the State of North Carolina whose mortgage loans were serviced by Nationstar, and whose mortgage servicing was transferred to Nationstar while in a state of default, who had funds in excess of a single monthly payment withdrawn from their account during the period from April 30, 2020 through the filing of this Complaint.

41.     Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Nationstar and any entity in which Nationstar has a controlling interest in Nationstar and its

8

legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

42. *Numerosity*: Plaintiffs are unable to provide a specific number of members in each of the classes because that information is solely in the possession of Nationstar. However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Nationstar' business records. Upon information and belief, each class contains at least hundreds of consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

43. *Commonality*: Common questions of law and fact predominate over any individual issues that may be presented, because Nationstar's improper automatic withdrawals seemingly occurred through a single action or single series of actions allowing thousands of borrowers to have funds withdrawn at substantially the same time. Common questions include, but are not limited to:

      a.     whether Nationstar' unlawful withdrawals constitute a violation of the FDCPA.

      b.     Whether Nationstar's acts violate the North Carolina Debt Collection Act.

9

c. Whether Nationstar had adequate measures in place to protect its borrowers from unlawful theft of funds from their bank accounts through inappropriate ACH debit transactions.

d. Whether Nationstar complied with relevant industry standards, regulations, and guidelines.

e. The facts and set of circumstances surrounding the cause of these unauthorized ACH debits.

44. *Typicality*: The claims of Plaintiffs are typical of the claims of the proposed class and all are based on the same facts and legal theories, as all such claims arise out of Nationstar' conduct (i.e. unauthorized ACH debits).

45. *Adequate Representation*: Plaintiffs are adequate representatives of the class in that they do not have antagonistic or conflicting claims with other members of the class. Plaintiffs have also retained counsel experienced in the prosecution of complex class actions, specifically including experience with consumer class actions.

46. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of his responsibilities to the putative class and has accepted such responsibilities.

47. *Predominance and Superiority*: The classes are appropriate for certification because questions of law and fact common to the members of the

10

classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the classes is impracticable. Should individual class members be required to bring separate actions, this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.***
**(On behalf of the FDCPA Sub-Class)**

48. The forgoing allegations are hereby reincorporated by reference as if fully restated herein.

49. Nationstar often acts as a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692a(6).

50. Nationstar acted as a "debt collector" in servicing Plaintiffs' mortgage because his loans was in default at the time Nationstar obtained the

11

servicing rights.

51.     Plaintiffs and all members of the Classes are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692a(3) since they are natural persons allegedly obligated to pay a consumer debt.

52.     At all material times, Plaintiffs' debt and the debts of the Class members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

53.     Nationstar has collected debt in violation of 15 U.S.C. § 1692e, in that it took action that it could not legally take. Each mortgage transaction is subject to a promissory note which prohibits Nationstar's actions. Similarly, each borrower who authorized ACH transactions from their checking account authorized only one debit per month to cover their payment.

54.     FDCPA section 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

55.     Nationstar has attempted to collect debt in violation of 15 U.S.C. § 1692f by using unfair and unconscionable means, including collecting amounts not expressly authorized by the Borrower, Borrower's deed of trust, Borrower's note, or permitted by law.

56.     As a result of Nationstar's unlawful attempts to collect debt, Plaintiffs and the Class Members are entitled to actual and statutory damages, as well as their reasonable attorneys' fees.

12

## SECOND CAUSE OF ACTION
## Violations of the North Carolina Debt Collection Act, N.C.G.S. § 75-50, *et seq.*
## (On behalf of the NC Class)

57.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

58.     Nationstar is a "debt collector" as defined by the NCDCA, N.C.G.S. § 75-50.

59.     Plaintiffs and the North Carolina Class are "consumers" as that term is defined by N.C.G.S. § 75-50.

60.     N.C.G.S. § 75-54 prohibits debt collectors from collecting or attempting to collect debt by any fraudulent, deceptive, or misleading representations.

61.     Nationstar, or its agents, attempted to collect and did collect debt in violation of N.C.G.S. § 75-54 in that it falsely misrepresented to third parties, such as ODFIs and RDFIs that it was entitled to withdraw funds from borrower accounts like Mr. Dugan's.

62.     N.C.G.S. § 75-55 prohibits debt collectors from collecting or attempting to collect debt by use of any unconscionable means.

63.     Nationstar attempted to collect and did collect debt in violation of N.C.G.S. § 75-55 in that it unfairly collected amounts of money from consumers

Case 1:21-cv-00341-TDS-JEP   Document 1   Filed 04/30/21   Page 13 of 20

without being legally entitled to such fee or charge.

64.    Nationstar attempted to collect and did collect debt in violation of N.C.G.S. § 75-55 in that taking thousands of dollars from its borrowers' accounts is simply **unconscionable**.

65.    Plaintiff, and others similarly situated, are entitled to recover statutory damages under the NCDCA for each instance in which an improper ACH debit transaction was initiated.

66.    As a result of Nationstar's unlawful attempts to collect debt, Plaintiffs and the Class Members are entitled to actual and statutory damages, as well as their reasonable attorneys' fees.

## THIRD CAUSE OF ACTION
Negligence
(on behalf of the NC Class)

67.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

68.    Nationstar has a duty to take reasonable precautions to ensure the security of its borrowers' accounts from improper unauthorized automatic withdrawals.

69.    Nationstar was negligent in that it:

   a.    Failed to take proper steps to ensure that borrowers can safely provide Nationstar with access to their checking accounts so that monthly mortgage payments can be made.

14

b. Failed to adequately supervise its employees, vendors, and/or agents (including ACI Worldwide) to ensure that the automatic withdrawal process was safe, reliable, and trustworthy.

c. Failed to establish reasonable procedures to immediately suspend ACH debit requests from borrowers once a problem was identified.

d. Failed to establish reasonable procedures to ensure that multiple entries of the same dollar amount and same receiver would not be initiated on the same day.

e. Failed to ensure that appropriate risk management guidelines for payment processors were followed.

f. Failed to comply with relevant NACHA Operating Rules.

g. Failed to comply with Relevant Federal laws and regulations, including but not limited to 31 C.F.R. Part 210, the Uniform Commercial Code, and the Electronic Funds Transfer Act.

h. Otherwise failed to act as an ordinarily reasonable mortgage servicer would under the conditions then and there existing as will be shown after discovery and at trial.

i. Otherwise failed to act as an ordinarily reasonable originator

15

of ACH debit payment transactions would under the conditions then and there existing as will be shown after discovery and at trial.

70.     Nationstar's negligence was the proximate cause of Plaintiff's injuries, and the injuries of others similarly situated,

71.     Nationstar is aware of the reasonable foreseeability that a series of automatic withdrawals would have disastrous consequences for borrowers, including Plaintiff; including stress, anxiety, and emotional injuries resulting from a loss of funds, even a temporary one.

## FOURTH CAUSE OF ACTION
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act: N.C.G.S. § 75-1.1
### (on behalf of the NC Class)

72.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

73.     Nationstar's mortgage servicing operations with borrowers such as Mr. Dugan constitute commerce.

74.     N.C.G.S. § 75-1.1 (the "UDTPA") prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

75.     The specific acts by Nationstar, or its agents of unlawfully initiating debit transactions to allow borrower's RDFIs to send borrower's

money to Nationstar, are in or affecting commerce.

76. The specific acts by Nationstar, or its agents of unlawfully initiating debit transactions to allow borrower's RDFIs to send borrower's money to Nationstar, are unfair and deceptive, as defined by the UDTPA.

77. Plaintiff has been subjected to pecuniary, and non-pecuniary injuries resulting from Nationstar's unfair and deceptive conduct.

78. Plaintiff and others similarly situated are entitled to recover treble damages and attorney's fees if allowed by the discretion of the Court pursuant to Chapter 75 of the North Carolina General Statutes.

## FIFTH CAUSE OF ACTION
### Conversion
### (on behalf of the NC Class)

79. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

80. Nationstar converted the personal property of Plaintiff and the NC Class by initiating unauthorized ACH debits from bank accounts owned by Plaintiff and the NC Class.

81. Nationstar engaged in the unauthorized assumption and exercise of the right of ownership over funds in the bank accounts of Plaintiff and the NC Class to the exclusion of the respective account owners' rights.

82. Thus, Plaintiff and the NC Class were denied access to funds in their accounts and their right to dominion over their personal property was wrongfully violated by

17

Nationstar (or its agent).

83.     Nationstar's conversion of personal property from Plaintiff and the NC Class was accompanied by outrageous and aggravated conduct (i.e. it was done to more than 14,000 North Carolinians, it was done multiple times to some North Carolinians, it affected financially vulnerable persons, and because Nationstar financially benefitted from interest that accrued on the converted funds).

84.     Nationstar's conversion of personal property from Plaintiff and the NC Class was fraudulent, willful or wanton conduct that demonstrated indifference to the rights and safety of others; and Nationstar knew or should have known its conduct was reasonably likely to result in harm to Plaintiff and the NC Class.

85.     Plaintiffs and others similarly situated are entitled to recover compensatory and punitive damages pursuant to N.C.G.S. § 1D-15 as a result of Nationstar's conversion.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and all others similarly situated pray the Court for judgment as set forth below:

1.     Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives, and appointing the undersigned as Class Counsel;

2.     Adjudging that Nationstar is liable under the causes of actions asserted above, and awarding Plaintiffs and the members of the NC Class and FDCPA Sub-Class (collectively, "Class Members")

18

actual and statutory damages;

3.    Awarding Plaintiffs and all Class Members their reasonable attorneys' fees and costs incurred pursuant to the FDCPA and NCDCA;

4.    That the compensatory damages of Plaintiffs and the Class Members be trebled by the Court pursuant to Chapter 75 of the North Carolina General Statutes;

5.    For punitive damages to the extent allowed by law;

6.    That the costs of this action be taxed to Nationstar;

7.    For a trial by jury on all issues so triable; and,

8.    For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 30th day of April, 2021.

WHITFIELD BRYSON LLP

/s/ Scott C. Harris
Scott C. Harris
N.C. Bar No.: 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@whitfieldbryson.com

*Attorneys for Named Plaintiffs and the putative Classes*

19

MAGINNIS HOWARD

/s/ Edward H. Maginnis
Edward H. Maginnis
N.C. Bar No. 39317
Karl S. Gwaltney
N.C. Bar No. 45118
Asa C. Edwards
N.C. Bar No. 46000
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com
aedwards@maginnishoward.com

20