IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID DUGAN, on behalf of himself )
and all others similarly situated, )
                                    )
                   Plaintiff,       )
                                    )
        v.                          )        1:21-CV-00341
                                    )
NATIONSTAR MORTGAGE LLC and ACI     )
WORLDWIDE, CORP.,                   )
                                    )
                   Defendants.      )
                                    )

## FINAL ORDER AND JUDGMENT

Before the court is Plaintiff David Dugan's "Unopposed Motion for Final Approval of Class Action Settlement" ("Final Approval Motion") (Doc. 80) and Plaintiff's Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards for the Class Representatives ("Fee Motion") (Doc. 78). Plaintiff and Defendants Nationstar Mortgage, LLC and ACI Worldwide Corporation, through their respective counsel, entered into a Class Action Settlement Agreement ("the Agreement") (Doc. 71-2), which is subject to review under Federal Rule of Civil Procedure 23. The court held a fairness hearing on May 31, 2023. For the reasons set forth below, the court will grant both motions.

I.    **BACKGROUND**

On September 10, 2021, Plaintiff Dugan, individually and on behalf of similarly situated persons, filed this class action

lawsuit against Nationstar Mortgage, LLC and ACI Worldwide Corporation, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, _et seq._, and the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75 -50, _et seq._ (Doc. 21.) On December 2, 2021, the court stayed the matter (Doc. 36) pending global mediation (_see_ Doc. 35). Over the next several months, the court maintained the stay, on the request of the parties, while they worked toward a resolution. (Docs. 38, 40, 42, 44, 46, 48, 50, 52, 55.) On May 23, 2022, the parties informed the court that they had "reached an agreement in principle to settle the litigated claims in this case" and again requested that "all deadlines stay suspended pending the completion of the formal settlement agreement[.]" (Doc. 56.) The court maintained the stay several more times, again on the request of the parties, pending a motion for preliminary approval. (Docs. 57, 59, 61, 63, 65, 67, 69.)

On August 5, 2022, Plaintiff moved for preliminary approval of the class action settlement (Doc. 70), which the court granted on February 13, 2023 (Doc. 77). On May 17, 2023, Plaintiff moved for final approval of the settlement. (Doc. 80.) Plaintiff also moved for attorneys' fees and expenses, along with a service award for the Class Representatives. (Doc. 78.)

On May 31, 2023, the court held a fairness hearing, pursuant to Federal Rule of Civil Procedure 23, to determine whether this action satisfies the applicable prerequisites for class action

treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Settlement Class Members. The parties represent that they received no objections to the settlement, and no objectors appeared at the hearing, which was held in open court.

The parties have now requested final certification of the settlement class under Rule 23(b)(3) and final approval of the proposed class action settlement. The court has read and considered the Agreement, Final Approval Motion, the Fee Motion, and the record, and hereby incorporates the definitions set forth in the Agreement.

The Agreement provides the following relief, which in the aggregate, makes available $10,550,000, comprised of the following:

(a) "Settlement Fund A": $5,000,000 to be funded by ACI to compensate Settlement Class Members whose accounts were subjected to the Incident,[1] after deductions for settlement administration costs associated with the provision of class notice and administration of the settlement, any attorneys' fees and expense reimbursement to Class Counsel, and any service awards to the Representative Plaintiffs as awarded by the court. (Doc.

---

[1] The Agreement defines the "Incident" as the alleged unauthorized Automated Clearinghouse ("ACH") activity by Defendants during April 23-26, 2021. (Doc. 71-2 at 1; see Doc. 71 at 2.)

71-2 ¶ 2.1(a).)[2]

(b)     "Settlement Fund B": $1,000,000 to be funded by ACI to compensate Settlement Class Members for their unreimbursed actual damages caused by the Incident. (Doc. 71-2 ¶ 2.1(b).)

(c)     "Settlement Fund C": ACI will contribute additional funds to "Settlement Fund A," totaling $500,000 if more than 8% of the settlement class members submit approved claims, or $250,000 if more than 4% and less than 8% of the Settlement Class Members submit approved claims. (Doc. 71-2 ¶ 2.1(c).)

(d)     Defendants will forgive and waive any entitlement from Settlement Class Members to recover an amount totaling $2,860,000 in overpayments made by ACI to approximately 1,200 Settlement Class Members in the Incident. (Doc. 71-2 ¶ 2.1(d).)

(e)     Defendants will forgive and waive any entitlement to recover from the Settlement Class Members the approximately $190,000 in actual damages payments made by Nationstar to settlement class members relative to the Incident. (Doc. 71-2 ¶ 2.1(e).)

---

[2] Settlement Class Members may submit a claim for up to $100 per claimant, subject to a pro rata increase or decrease as set forth in the Agreement. (Doc. 71-2 ¶¶ 7.3.1 and 7.3.2.)

(f)  ACI shall provide non-monetary relief to the settlement class members in the form of business practices changes valued at $1,000,000.  (Doc. 71-2 ¶ 2.1(f).)

## II.  MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) and jurisdiction over all settling parties.  Because the proposed settlement meets the requirements under Federal Rule of Civil Procedure 23, the court will approve the proposed settlement.

### A.  Class Members

Pursuant to Federal Rule of Civil Procedure 23(b)(3), this action is hereby finally certified, for settlement purposes only, as a class action on behalf of the following class (the "Settlement Class Members") with respect to the claims asserted in this lawsuit:

> All Persons throughout the United States whose mortgages were or are serviced by Nationstar, and who were subjected to the Incident; namely, alleged unauthorized Automated Clearinghouse ("ACH") activity by Defendants during April 23-26, 2021.
>
> Excluded from the Settlement Class are: (a) all Persons who Opt Out of or otherwise choose not to participate in, the Settlement; (b) any affiliate, parent, or subsidiary of Defendants; (c) any entity in which Defendants have a controlling interest; (d) any officers, directors, or employees, or immediate family members of the officers, directors or employees, of Defendants; (e) any successors or assigns of Defendants; (f) any legal counsel or employee of legal counsel for Defendants; and (g) the presiding Judges in the Litigation, as well as the Judges' staff and their immediate family members.

(See Doc. 71-2 ¶¶ 1.42, 1.43; Doc. 80-3 at 3.)

5

**B. Class Representative and Class Counsel Appointment**

Pursuant to Federal Rule of Civil Procedure 23, the court affirms its appointment of the following as Class Representatives: Marlene Dehner, Charita Devereaux, David Dugan, Anita Friday, Dwayne Friday, LaTreece Jones, Dawn Keil, Shuron Miller, Brett Padalecki, and Dianne Thompson.  (See Doc. 77 ¶ 5.)

The court also affirms its appointment of the following lawyers as Class Counsel: Scott C. Harris of Milberg Coleman Bryson Phillips Grossman, PLLC; Edward H. Maginnis of Maginnis Howard; Norberto J. Cisneros of Maddox & Cisneros LLP; Marc E. Dann of DannLaw; George Haines of Freedom Law Firm, LLC; Michael Kind of Kind Law; Joel R. Rhine of Rhine Law Firm, P.C.; and Thomas A. Zimmerman, Jr., of Zimmerman Law Offices, P.C.  (See Doc. 77 ¶ 6.)

**C. Notice and Claim Forms**

Federal Rule of Civil Procedure 23(e)(1) requires that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  McAdams v. Robinson, 26 F.4th 149, 158 (4th Cir. 2022) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005)).  Further, to satisfy due process, notice "must be 'reasonably calculated, under all the

6

circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'" Id. at 157–58 (alterations in original) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

Here, the court finds that the form and manner of distributing the class notice (i) constituted the best notice practicable under the circumstances; (ii) constituted notice that was reasonably calculated under the circumstances to apprise settlement class members of the pendency of the litigation, of their right to object to or exclude themselves from the proposed settlement as applicable, of their right to appear at the fairness hearing, and of their right to seek relief; (iii) explained in plain language the action's nature, the issues, class claims, and defenses, that a settlement class member may appear through an attorney, a settlement class member's deadlines and manner for objecting or requesting exclusion, and the binding effect of a judgment; (iv) informed settlement class members how to file a claim and the respective deadlines for filing a claim; (v) constituted reasonable, due, adequate, and sufficient notice to all persons entitled to receive notice; and (vi) complies in all respects with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process.

### D. Final Class Certification

Federal Rule 23(a) sets forth four prerequisites for a class action to be certified: (1) the class is so numerous that joinder

7

of all members is impracticable; (2) there are questions of fact or law common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition to the four prerequisites set out in Rule 23(a), the requirements of one of three subsections of Rule 23(b) must also be satisfied. Plaintiff seeks certification pursuant to Rule 23(b)(3), under which Plaintiff must establish that common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for the fair and efficient handling of the claim. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the court affirms its preliminary findings that this action satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23 (see Doc. 77 ¶ 2), namely:

    a.   The Settlement Class Members, of which there are approximately 480,000, are so numerous that joinder of all of them in this lawsuit is impracticable;

    b.   There are questions of law and fact common to the Settlement Class Members, which predominate over any individual questions, including (i) whether Defendants posted ACH debits and credits on settlement class members' bank accounts that were in excess of amounts for

8

which settlement class members had given Defendants their consent, approval, and authorization to withdraw or deposit, (ii) whether the alleged debit postings constitute conversion of settlement class members' funds, (iii) whether there existed an express or implied contract between Defendants and settlement class members, and whether Defendants breached that contract, and (iv) whether Defendants violated the Electronic Funds Transfer Act;

c.    The claims of Plaintiff are typical of the claims of the Settlement Class Members;

d.    Plaintiff and Settlement Class Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members;

e.    Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

**E.    Fairness and Adequacy of the Settlement Agreement**

Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit. <u>See</u> Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class — or a class proposed to

be certified for purposes of settlement — may be settled, voluntarily dismissed, or compromised only with the court's approval."). "When the court reviews a proposed class-action settlement, it acts as a fiduciary for the class." In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig., 952 F.3d 471, 483 (4th Cir. 2020). The court may approve the proposed settlement "only after a hearing and only on finding that [the proposed settlement] is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); see Johnson v. Goodwin, No. 1:18-CV-00467, 2022 WL 1632940, at *3 (M.D.N.C. Mar. 7, 2022).

Under Fourth Circuit law, a settlement is considered fair if it "was reached as a result of good faith bargaining at arm's length, without collusion[.]" In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991); see Rule 23(e)(2)(B). To evaluate the fairness of a settlement, a court also considers, among other things: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." In re Lumber Liquidators, 952 F.3d at 484 (citing In re Jiffy Lube, 927 F.2d at 159).

The court concludes that the settlement is fair and that all of the factors weigh in favor of this finding. The record indicates that the parties reached the settlement agreement as a result of

10

good-faith bargaining at arm's length without collusion. The posture of the case and the extent of discovery also weigh in favor of this finding: the parties have engaged in informal discovery prior to mediation and exchanged a significant amount of information (Doc. 35 ¶ 1). Further, the parties reached agreement only with the help of a neutral mediator. (Doc. 71-1 ¶ 11.) Finally, Class Counsel is experienced in the area of complex class action litigation in matters involving alleged financial harms. (Doc. 80-2 ¶ 25.)

The court also concludes that the proposed settlement is adequate. In determining whether the settlement is adequate, a court should consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." In re Lumber Liquidators, 952 F.3d at 484 (citing In re Jiffy Lube, 927 F.2d at 159).

The first two factors - the relative strength of Plaintiff's case on the merits and the existence of any difficulties of proof or strong defenses the Plaintiff is likely to encounter if the case goes to trial - weigh in favor of such a finding. Defendant Nationstar asserted numerous defenses in its comprehensive motion

11

to dismiss (Doc. 27), and both Defendant Nationstar and ACI provided informal discovery showing that the erroneous ACH charges were quickly reversed, meaning that all of the money was quickly put back into the customers' accounts. (Doc. 81 at 13.) Thus, Plaintiff's success on the merits, if the case were to proceed to trial, is not certain.

The remaining factors — the anticipated duration and expense of additional litigation; Defendants' solvency; and the degree of opposition to the settlement – also lead the court to conclude that the proposed settlement is adequate. The additional investment in costs and time that would be required to continue litigating this case would doubtlessly have been extremely costly. Further, "although Defendants' solvency is not contested, it does not weigh against approval of the proposed settlement." Feinberg v. T. Rowe Price Grp., Inc., 610 F. Supp. 3d 758, 769 (D. Md. 2022); see Henley v. FMC Corp., 207 F. Supp. 2d 489, 494 (S.D.W. Va. 2002) ("The Court has no doubt [the defendant] would be able to satisfy any judgment entered against it. That consideration, however, is largely beside the point given the other factors weighing in favor of a negotiated resolution."). Finally – and crucially here - no Settlement Class Member has objected to the proposed settlement agreement, and only five individuals have requested to opt out. (Doc. 81 at 15; see Doc. ¶ 80-1 ¶ 14.) As such, the degree of opposition to settlement – which here, is non-existent - weighs heavily in favor of final

12

approval.  See Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 461 (D. Md. 2014) ("The fact that no class member objected supports final approval of the Settlement as fair, adequate, and reasonable."); In re Lumber Liquidators, 952 F.3d at 485–86 (citing cases demonstrating that an objection rate of less than one percent weighs in favor of adequacy).

For all these reasons, the court finds the terms of the settlement are fair, reasonable, and adequate.  The settlement will therefore be approved.

## III. ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

### A.    Attorneys' Fees

The FDCPA allows for the recovery of a "reasonable attorney's fee."  See 15 U.S.C. § 1692k(a)(3).  Section 1692k(a)(3) states:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court . . . .

Additionally, Federal Rule of Civil Procedure 23(h), which governs attorneys' fees in class actions, provides that a court may award "reasonable attorneys' fees . . . . that are authorized by law or by the parties' agreement."

There are two primary methods for calculating attorneys' fees in the Fourth Circuit: the percentage of the fund method, and the lodestar method.  See McAdams, 26 F.4th at 162; Ford v. Cardinal

13

_Innovations Healthcare Sols._, No. 1:20-CV-736, 2022 WL 558376, at *2 (M.D.N.C. Jan. 21, 2022); _Phillips v. Triad Guar. Inc._, No. 1:09cv71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016). "[T]he percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund," while "[t]he lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund[,] then to multiply that figure by a reasonable hourly rate." _Phillips_, 2016 WL 2636289, at *2 (alteration in original) (internal quotation marks omitted). "Courts within the Fourth Circuit have cautioned against the lodestar approach in determining attorneys' fees in common fund cases such as this." _Kruger v. Novant Health, Inc._, No. 1:14CV208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016) (citing cases).

In this case, Class Counsel seeks attorneys' fees based on the percentage of the fund method. (Doc. 79 at 8; Doc. 78-1 ¶¶ 110-15.) To determine whether the fees sought under the percentage of the fund method are reasonable, the lodestar may be used as a cross-check, as well as the twelve factors from _Barber v. Kimbrell's, Inc._, 577 F.2d 216, 226 n.28 (4th Cir. 1978). _See Ford_, 2022 WL 558376, at *3; _Phillips_, 2016 WL 2636289, at *2-3; _Kirven v. Cent. States Health & Life Co. of Omaha_, No. 3:11-2149-MBS, 2015 WL 1314086, at *12 (D.S.C. Mar. 23, 2015) (collecting district court cases within the Fourth Circuit that use the lodestar method as a

14

cross-check to ensure that the percentage of the fund method award is fair and reasonable). The Barber factors provide as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber, 577 F.2d at 226 n.28.

The parties have agreed that Class Counsel will receive $3,516,666.67, equal to one-third of the $10,550,000 aggregate settlement value, as attorneys' fees. (Doc. 71-2 ¶ 9.1; Doc. 78-1 ¶ 141-142; Doc. 79 at 8, 25; Doc. 80-3 ¶ 12.) "In considering awards in similar cases, courts look to cases of similar size, rather than similar subject matter." Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 465 (D. Md. 2014). The requested 33.33 percent award is within the general range of percentages that have been approved in other cases in this circuit. See id. ("Attorneys' fees awarded under the 'percentage of recovery' method are generally between twenty-five (25) and thirty (30) percent of the fund."); Ford, 2022 WL 558376, at *4 (awarding attorneys' fees equal to 33.33 percent of the gross settlement fund); Phillips, 2016 WL 2636289,

at *8 (awarding attorneys' fees of 30 percent of the settlement amount in a percentage of the fund case); cf. Kruger, 2016 WL 6769066, at *2 (noting that "courts have found that a one-third fee is consistent with the market rate in a complex ERISA 401(k) fee case" (internal quotation marks omitted)).

In considering the relevant Barber factors, the court finds the following: (1) the case required Class Counsel to expend significant time and labor, as Class Counsel invested nearly 2500 hours litigating the claims in this case (Doc. 78-1 ¶ 128; Doc. 79 at 22); (2) the novelty and difficulty of the questions raised weighs in favor of approving the fee because Class Counsel had to address procedurally and substantively complex FDCPA issues, as well as the application of various state consumer protection laws (Doc. 78-1 ¶ 95; Doc. 79 at 15-16); (3) the skill required to properly perform the legal services rendered weighs in favor of approving the fee because complex class actions like this involve not only navigating the contours of a complicated statute like the FDCPA, but also the factors laid out in Rule 23; (4) the attorneys' opportunity costs in pressing the instant litigation weigh in favor of approving the fee because the significant involvement in time reduced Class Counsel's ability to take on additional cases during the course of this litigation (Doc. 78-1 ¶¶ 116-18); (5) Class Counsel's customary fee for like work is typically one-third of any recovery and up to forty-percent (id. ¶ 112); see Smith v. Krispy

16

Kreme Doughnut Corp., No. 1:05CV187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("In this jurisdiction, contingent fees of one-third . . . are common."); (6) the attorneys' expectations at the outset of the litigation weigh in favor of approving the fee because Class Counsel undertook the case on a 33.33 percent contingency fee basis, thereby taking the risk of obtaining nothing if no recovery was obtained (Doc. 78-1 ¶ 120); (7) there were no time limitations imposed by the client or circumstances in this case, so the seventh factor is not applicable to this case; (8) the results obtained weigh in favor of approving the fee, because Class Counsel obtained an excellent result for the class, having secured a total settlement value of $10,550,000 from which settlement class members can file a claim to recover damages they may have incurred due to the Incident (id. ¶ 119); (9) the experience, reputation, and ability of the attorneys weigh in favor of approving the fee, because Class Counsel has significant experience with complex class action and other complex litigation (id. ¶¶ 5-6); (10) the undesirability of this case within the legal community is not material in this case, nor is (11) the nature and length of the professional relationship between attorney and client; (12) the attorneys' fees award in similar cases factor weighs in favor of approving the settlement because fee awards of one-third of the common fund are common in complex class actions, see, e.g., Kruger, 2016 WL 6769066, at *2 (noting that a "one-third fee is consistent with the market rate"

in ERISA class action); <u>Scott v. Fam. Dollar Stores, Inc.</u>, No. 308CV00540MOCDSC, 2018 WL 1321048, at *5 (W.D.N.C. Mar. 14, 2018) (awarding one-third of the settlement fund plus reimbursement of costs); <u>Brown v. Lowe's Companies, Inc.</u>, No. 513CV00079RLVDSC, 2016 WL 6496447, at *3 (W.D.N.C. Nov. 1, 2016) ("[T]he Court finds that this case warrants the requested award of attorneys' fees and costs to Class Counsel . . . constituting one-third of the Maximum Settlement Amount as described in the Settlement Agreement.")

"A lodestar cross-check of the fees request confirms its reasonableness." <u>Ford</u>, 2022 WL 558376, at *5 (quotation omitted). "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." <u>Id.</u> (quoting <u>Phillips</u>, 2016 WL 2636289, at *7). The lodestar fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Lyle v. Food Lion, Inc.</u>, 954 F.2d 984, 988 (4th Cir. 1992) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)). The lodestar fee is presumptively reasonable. <u>Id.</u> (citing <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986)).

Here, Class Counsel represents that the lodestar amount is $1,299,987. (Doc. 78-1 ¶ 128; Doc. 79 at 22.) Counsel have filed the relevant billing records in support of this amount, and those

18

show the duration and substance of the billings. (Doc. 78-1 ¶ 126, 128; Doc. 78-2 ¶ 4; Doc. 78-3 ¶ 3; Doc. 78-4 ¶ 3; Doc. 78-5 ¶ 3; Doc. 78-6 ¶ 3; Doc. 78-7 ¶ 3.) In total, the records reflect that counsel in the multiple cases spent 2,484.99 hours litigating these claim across all the national class. (Doc. 78-1 ¶ 128.)

Class Counsel's request of $3,516,666.67 as their attorneys' fees is thus 2.71 times larger than the lodestar amount. (Doc. 79 at 24.) This multiplier is within the range of multipliers district courts have found to be reasonable. See Phillips, 2016 WL 2636289 at *8 ("Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee."); Binotti v. Duke Univ., No. 1:20-CV-470, 2021 WL 5366877, at *4 (M.D.N.C. Aug. 30, 2021) (holding that a 3.35 multiplier is reasonable and appropriate and noting that Class Counsel will spend time in support of a final approval of the settlement and supervision of the distribution); In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 742 (3d Cir. 2001) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (internal quotation marks omitted)).

Because Class Counsel's lodestar multiplier is within the range of those generally accepted, the requested fees are reasonable.

### B. Expenses

Pursuant to Rule 23(h), a trial court may award nontaxable

costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). "The prevailing view is that expenses are awarded in addition to the fee percentage." Krispy Kreme Doughnut Corp., 2007 WL 119157, at *3 (citation omitted); Binotti, 2021 WL 5366877, at *5. "Costs that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" Feinberg, 610 F. Supp. 3d at 773 (quoting Spell v. McDaniel, 852 F.2d 762, 771 (4th Cir. 1988)).

Here, Class Counsel requests reimbursement of their costs and expenses of $18,483.71. (Doc. 78-1 ¶ 141.) The court has reviewed these expenses and finds that they are fair and reasonable, were necessarily incurred on behalf of the Settlement Class, and shall be awarded to Class Counsel, to be paid in the manner described in the Agreement.

### C. Service Awards

Class Counsel also seeks a service award of $2,500 to each of the following Class Representatives across the several actions that were consolidated into this case: Brett Padalecki, Charita Devereaux, Dawn Keil, David Dugan, Dianne Thompson, Shuron Miller, Anita Friday, Dwayne Friday, LaTreece Jones, and Marlene Dehner. (Doc. 78-1 ¶ 142; Doc. 79 at 26.) "Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in

bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Berry v. Schulman, 807 F.3d 600, 613 (4th Cir. 2015) (internal quotations and citations omitted). "To determine whether an incentive payment is warranted, the court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" Decohen v. Abbasi, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) (citing Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

This request for service awards is fair and reasonable, commensurate with the Class Representatives' efforts in the litigation, and is well within the scope of awards customarily awarded in the Fourth Circuit. See Feinberg, 610 F. Supp. 3d at 774 (awarding more than $10,000 to each of the Class Representatives); In re Wachovia Corp. ERISA Litig., 3:09CV262, 2011 WL 5037183, at *7 (W.D.N.C. Oct. 24, 2011) (awarding $5,000 to each of the named plaintiffs). As Class Counsel indicates, "[t]he Named Plaintiffs were prepared to litigate this action through trial to properly represent the classes and fight for significant relief[,]" and "[a]bsent their efforts, the Class would have received no compensation." (Doc. 79 at 26-27.) The requested service awards are hereby granted and shall be awarded

to each Class Representative in the amount of $2,500, to be paid in the manner described in the Agreement.

## IV.  CONCLUSION

For these reasons, therefore,

IT IS ORDERED AND ADJUDGED that Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (Doc. 80) is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that the Agreement is finally approved, and the parties are directed to consummate the Agreement in accordance with its terms.  The Settlement Administrator is hereby authorized to complete the distribution of benefits pursuant to the terms of the Agreement, and the Settlement Administrator shall be compensated in the manner set forth in the Agreement.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Awards (Doc. 78) is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that the action is DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder
United States District Judge

June 6, 2023